IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br><br><br>    vs.<br><br><br>CLINT LEWIS WALKER,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS<br><br><br><br><br><br>Case No. 2:06-CR-236 TS |

This matter came before the Court on August 17, 2006, for an evidentiary hearing on Defendant's Motion to Suppress.

## I.  FINDINGS OF FACT

On March 4, 2006, an investigator (the Investigator) for the Division of Wildlife Resources in Utah was at a gas station in Wasatch County fueling up his official, but unmarked, white pickup truck.  He met a Wasatch County Deputy (the Deputy) he knew. The Deputy told the Investigator that he was investigating a report of gas theft.  The Investigator overheard the gas station attendant describing the vehicle involved as a silver pickup truck similar to a Toyota with a white patio chair and a green bag in the bed of the pickup.

1

The Deputy told the Investigator that he thought the driver of the silver pickup might be an ice fisherman, a common activity in the area that time of year.  The Deputy further told the Investigator that the white chair and green bag sounded like the type of equipment that would be used in ice fishing.   The Investigator replied that he would check a nearby reservoir for the suspect vehicle on his way back to town.

The Investigator did not see the silver truck at the reservoir, but on his way back, he saw a silver pickup.  The silver pickup was reversing directions and eventually passed the Investigator.  As it passed, the Investigator noticed two things: first, that it had a white chair in its bed, and second, that it was not a Toyota.  He called dispatch and asked them to call the gas station attendant if the make of the suspect vehicle could be something other than a Toyota.  Dispatch informed the Investigator that the attendant stated that it was just a smaller pickup truck and the attendant had assumed it was a Toyota.

In the meantime, the silver pickup had pulled into the entrance of a gated community of summer homes and the Investigator noted that someone was shutting the gate from the inside to keep the truck out.  He observed the silver pickup pull off to the side of the road near the gate.  The Investigator saw that the numeric portion of the license plate was blocked with piece of plastic.  He noticed that there were a lot of items in the pickup's bed, including something green.

The Investigator pulled over, parked, and went over to the driver's side of the silver truck.  He was in plain clothes but identified himself as a state officer and showed his badge to the driver.  The driver had his door shut and spoke to the Investigator through his open window.

The Investigator explained that there had been a "gas skip" at a nearby gas station and asked the driver if he had been at that gas station that day.  The driver responded that he had driven by it but had not stopped.

The Investigator asked the driver for identification and noticed that driver was very nervous and trembling.  While the Investigator watched, the driver who was looking straight ahead, hesitated, then made a quick furtive gesture or lunge with both hands in the direction of the passenger seat.  The Investigator ordered him to stop because there was clothing on the passenger seat and the Investigator could not see what the driver was reaching for.

The driver stopped and again sat looking straight ahead.  The Investigator noticed that the driver look despondent.  Due to the driver's earlier movement towards the passenger seat, the Investigator asked if there were any weapons in the vehicle.  The driver said "no."

The Investigator asked again for identification and noticed that the driver's hands began moving in the direction of a fanny pack around his waist, then towards cigarettes located between the driver and the console, then towards the dashboard.  The Investigator observed that his expression had changed to one which the Investigator had learned through training and experience to characterize as a "fight or flight" look. To the Investigator, it appeared that the driver's hands were moving while his brain was working to decide what to do.

The Investigator became concerned for his safety, opened the door and asked the driver to step out.  When the driver stepped out, the Investigator patted him down for

3

weapons.  He discovered the driver was wearing an empty knife sheath.  The driver opened his fanny pack and produced an identification card.  The Investigator asked for a driver's license and the Investigator replied that it was in his driver's side visor.  The Investigator thought it was odd that the driver would have been reaching for the passenger seat when his driver's license was in the driver's side visor.  At the time, the nearest back up for the Investigator was approximately twenty to thirty minutes away.  The Investigator asked the driver to step in front of the vehicle while the Investigator patted down the front seat.  He leaned in through the passenger door to pat-down the front seat.  His pat-down revealed only clothing, but he observed that there was handgun ammunition on the floor. Upon seeing the ammunition, the Investigator opened the center console.  It contained a used syringe and hypodermic needle.  He shut the console, went to the driver and placed him in handcuffs.  He told him he was not under arrest but was being placed in handcuffs for safety reasons because of the ammunition, the syringe, and the missing knife.

The Investigator again asked about weapons in the vehicle, and this time the driver responded that he had a gun in the center console.  The Investigator again looked in the center console, but did not see a gun.  The driver then said it might be by the stick shift. The Investigator looked down to the floor by the stick shift and saw a cylinder shaped metal object.  The Investigator did not know what it was and asked the driver.  He responded that he had made it and it was a "zapper" or "popper," and was loaded with a .25 caliber round.

The Investigator secured the firearm in his own vehicle, and called dispatch.  He then went to the driver, placed him under arrest and read him his *Miranda* rights.  He searched the driver incident to the arrest and discovered a pack of cigarettes containing

4

a substance that field tested positive for methamphetamine.  He also found ammunition

in the driver's fanny pack and more ammunition in the vehicle.   The Investigator called for

backup and assistance in unloading the gun.   The driver was eventually identified as the

Defendant herein.

## II.  DISCUSSION

Defendant contends that the evidence obtained during the encounter should be

suppressed because there was not a reasonable suspicion to justify a *Terry*[1] frisk of

Defendant, and because there was not a reasonable suspicion needed to justify a search

of the pickup truck.  The government contends that the facts provide evidence to support

a *Terry* frisk of Defendant and a *Long*[2] search of his truck.

Defendant concedes that there was a basis for a brief investigatory stop if his pickup

truck matched the description of the pickup involved in the alleged gas theft.  The Court

finds that the Defendant's pickup did sufficiently match the description and, therefore, there

was a reasonable suspicion sufficient to justify a brief investigatory detention.   The

government concedes that at the time of the initial encounter, there was not probable

cause to search the truck.  Therefore, the only issues before the Court are the Defendant's

challenges to the *Terry* frisk and the *Long* search.

---

[1]*Terry v. Ohio*, 392 U.S. 1 (1968).

[2]*Michigan v. Long*, 463 U.S. 1032 (1983).

5

A.     *Terry* Frisk

A police officer may . . . "perform a 'patdown' of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous."[3]   "The purpose of the limited pat-down is not to discover evidence of a crime, 'but to allow the officer to pursue his investigation without fear of violence.'"[4]  In measuring the actions of a law enforcement officer under the Fourth Amendment, the Court looks "at the objective facts, not the officer's state of mind."[5]   The Court analyzes whether the reasonable suspicion requirement is met "through a filter of common sense and ordinary human experience."[6]

Defendant contends that the facts that he looked nervous, looked straight ahead, or made a move toward the passenger seat in response to a request for identification are not sufficient to establish a reasonable suspicion that he may be armed and dangerous. Additionally, Defendant points out that he had not behaved aggressively, that the officer had not run a background check or observed any weapons in the car, and the suspicion was only that he was involved in a gas theft, not a dangerous crime.

The Court does not view each factor in isolation, but instead views the totality of the circumstances as they would appear to a reasonable officer.[7] In this case, the events

---

[3]*United States v. Dennison,* 410 F.3d 1203, 1211 (10th Cir. 2005) (quoting *Knowles v. Iowa,* 525 U.S. 113, 118 (1998) (referencing *Terry,* 392 U.S. at 30-31)).

[4]*United States v. Garcia*, 459 F.3d 1059, 1064 (10th Cir. 2006).

[5]*United States v. Neff*, 300 F.3d 1217, 1222 (10th Cir. 2002).

[6]*Garcia*, 459 F.3d at 1064.

[7]*United States v. Manarrez*, 348 F.3d 881, 887 (10th Cir. 2003).

happened quickly.  The driver stared straight ahead instead of looking at the Investigator while being questioned.  In response to the request for identification, the driver hesitated, then, while still looking forward, suddenly made a move to a pile of clothing on the passenger seat for no apparent reason.  The Investigator had no way of knowing what was contained in or concealed by the pile of clothing.  When asked for identification a second time, the driver's expression changed from despondency to looking like he was trying to decide what to do.  His hands began to move in explained directions, first towards his fanny pack but then moved towards his cigarettes and then the dash, but not, as far as the Investigator could determine, moving towards any identification.  At the same time, the driver's new expression indicated to the Investigator that the driver was trying to decide what to do.  The Investigator's training and experience led him to believe that such a look indicated that the driver might fight him or was going to take off.

The Court finds that these circumstances give rise to a reasonable suspicion that the driver might have been armed and dangerous.  Accordingly, the Investigator opened the door, directed the driver to exit and patted him down for weapons.  The Court finds no Fourth Amendment violation from the *Terry* frisk.

B.  *Long* Search

"Officers can conduct a protective search of a vehicle's passenger compartment for weapons during an investigative detention when officers have a reasonable belief that a suspect poses a danger." [8]

---

[8]*Dennison*, 410 F.3d at 1213.

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.[9]

Again, the reasonable officer standard applies.[10]

The earlier pat-down was based upon the Investigator's reasonable suspicion that Defendant may be armed and dangerous. During his pat-down of Defendant, the Investigator discovered Defendant was wearing an empty knife sheath. This fact coupled with the other facts, in particular the earlier quick movement towards the pile of clothing, gave rise to a reasonable suspicion that the Defendant may gain control of a weapon, which, in turn, lead to grounds for a protective search of the passenger compartment of the pickup. The brief search was limited to the areas in which a weapon might be placed or hidden. The ammunition on the floor reinforced this reasonable suspicion because ammunition, like a knife sheath, suggests the presence of a weapon.

The Court finds that the protective search of the vehicle was justified by a reasonable belief in Defendant's threat to the Investigator's safety, which was, in turn, based upon the reasonable suspicion that Defendant was dangerous and able to gain immediate control of weapons.

## III.  ORDER

Based upon the foregoing, it is therefore

---

[9]*Id*. at 1210 (quoting *Long*, 463 U.S. at 1049 (quoting *Terry*, 392 U.S. at 21)).

[10]*Id*., at 1213.

8

ORDERED that Defendant's Motion to Suppress (Docket No. 8) is DENIED.  It is further

ORDERED that the time from the filing of the Motion to Suppress through the date of this order is excluded from the computation of the Speedy Trial Act time pursuant to 18 U.S.C. § 3161(h)(1)(F) and (J).

DATED November 21, 2006.

BY THE COURT:

_____

TED STEWART
United States District Judge